UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:14-CV-190

LOVERTA DOSSETT,                                                                                    Plaintiff

v.

WAL-MART STORES EAST, LIMITED PARTNERSHIP,                                   Defendant

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Wal-Mart Stores East's Motion in Limine Concerning Plaintiff's Expert Marvin Perkins. (Docket No. 21). Plaintiff Loverta Dossett has responded, (Docket No. 23), and Defendant has replied, (Docket No. 24). This matter is now ripe for adjudication. For the following reasons, the Court will **GRANT in part and DENY in part** Defendant's Motion in Limine.

### BACKGROUND

Loverta Dossett brings this lawsuit against Wal-Mart Stores East, Limited Partnership ("Wal-Mart") alleging a claim of negligence. Dossett went to the Wal-Mart on August 29, 2013, and alleges that as she was shopping, she stepped on a foreign substance, lost her footing, and fell to the floor. She believes that the substance consisted of grapes that had fallen from the display table onto the floor.

Dossett alleges that Wal-Mart was careless and negligent in: its failure to exercise reasonable case to provide customers with a safe place to shop; its failure to discover the substance and correct it; and its failure to warn customers of the dangerous foreign substance. Dossett alleges that as a result, she suffered serious injury and physical and mental pain.

1

# DISCUSSION

Wal-Mart has filed a Motion in Limine, arguing that Plaintiff's proposed expert witness Marvin Perkins does not meet the minimum standards for expert testimony under the Federal Rules of Evidence.

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, "the Supreme Court established a general gatekeeping obligation for trial courts to exclude from trial expert testimony that is unreliable and irrelevant." 509 U.S. 579, 597 (1993); *Conwood Co. v. U.S. Tobacco Co.*, 290 F.3d 768, 792 (6th Cir. 2002) (alteration and internal quotation marks omitted) (quoting *Hardyman v. Norfolk & W. Ry. Co.*, 243 F.3d 255, 260 (6th Cir. 2001)) (applying *Daubert*, 509 U.S. 579, 597 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–48 (1999)). In performing its gatekeeping function, the Court must determine whether evidence proffered under Rule 702 "both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. A key consideration is "whether the reasoning or methodology underlying the testimony is sufficiently valid." *Id.* at 592–93. The Supreme Court advises that the inquiry is "a flexible one," and that "[t]he focus ... must be solely on principles and methodology, not on the conclusions they generate." *Id.* at 594–95. A testifying expert must "employ[ ] in the courtroom

the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152.

While there is no "definitive checklist or test" for meeting the standard of Rule 702, *Daubert* laid out a number of factors that typically "bear on the inquiry," including: whether the theory or method in question "can be (and has been) tested," whether it "has been subjected to peer review and publication," whether it has a "known or potential rate of error," and whether the theory or technique enjoys "general acceptance" in the "relevant scientific community." *Daubert*, 509 U.S. at 593–94. Although *Daubert* addressed scientific evidence, the Supreme Court in *Kumho Tire Co. v. Carmichael* held that a trial court may consider the *Daubert* factors for all types of expert evidence. *Kumho Tire*, 526 U.S. at 150. Thus, the *Daubert* factors are nonexhaustive and may not be pertinent in cases where "the relevant reliability concerns ... focus upon personal knowledge or experience." *Id.*; *see also First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 335 (6th Cir. 2001).

The Sixth Circuit has developed further guidance on Rule 702 by recently outlining a number of "[r]ed flags that caution against certifying an expert." *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012) (citing *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 177 (6th Cir. 2009)). These include "reliance on anecdotal evidence, improper extrapolation, failure to consider other possible causes, lack of testing, and subjectivity." *Id.* (citing *Best*, 563 F.3d at 177).

### Marvin Perkins

Perkins is the President of Omega Safety & Environmental Consulting Firm, which is located in, and is a consultant for, Piedmont Service Group, a commercial air conditioning and lighting service company. Perkins's resume indicates that he specializes in Construction Safety

3

Compliance, OSHA Compliance Training, and Microbial Inspections. In his current position, he spends about 50% of his time on environmental issues (such as asbestos and mold), and 50% on OSHA regulations for employee safety. He stated that OSHA is not applicable to this case. Previously Perkins was the Corporate Safety Director at Piedmont Service Group and the Division Safety Director at Winn-Dixie Stores, Inc. He worked at Winn-Dixie from 1967 until 2000, starting as a bag boy, then working as district manager, and finally as division safety manager. He was the division safety director there for approximately 5 years, for over 165 stores. (Docket No. 21-11, at p. 12). In that role, he "[d]id many workplace safety training classes with retail employees, concerning employee safety and customer safety." (*Id.*, at p. 19, 42, 43). Further, Winn Dixie sent him, to safety seminars, safety training sessions, on employee and customer safety. (*Id.*, at p. 52, 53). Perkins stated that in reaching his conclusions in this case, he utilized "[t]he methods established with Winn Dixie Stores. My experience of 34 years in retail. And just basic best practices or common sense practices." (*Id.*, at p. 14). He noted that the standards are basically the same across supermarkets. (Docket No. 21-11, at 41). This is his first time being retained as an expert witness.

      In reaching his conclusions, Perkins reviewed documents as well as a DVD containing security camera footage which depicts the events in question. The footage begins approximately an hour before Dossett's fall. (Docket No. 21-2). It shows an employee sweeping the area before the fall, as well as the fall itself. *Id.* Perkins's expert report stated his conclusion that "it is obvious that Mrs. Dossett slipped on some foreign substance on the floor on the produce counter." (Docket No. 12-1). He also noted that: the nearby display appeared to have grapes or berries in the corner; the employee had just swept; after Dossett's fall the employee continued to sweep the area. Perkins also described a series of events that occurred after Dossett's fall.

4

Further, he noted that there were no wet floor signs or cones at, or brought to, the area; there were no anti-slip mats or rugs; and no inspection was conducted of the area during the incident. Perkins stated that Best Practices dictate that "'Wet Floor' signs/cones be used in 'wet' areas (areas of possible moisture items on the floor), preventing possible slip/falls in retail establishments, such as product departments of retail stores. None were observed in any area of this produce department. Anti-slip mats/rugs are a Best Practice policy in 'wet' areas of retail stores. None were observed anywhere in this produce department." (Docket No. 12-1). Perkins's conclusion stated that "Wal-Mart did not follow Best Practices of Safety for this customer in this incident . . ." and that Wal-Mart was negligent due to the lack of anti-slip rugs/mats, the absence of "Wet Floor" signs, and several other actions that occurred after Dossett's fall. (Docket No. 12-1).

In his deposition, Perkins stated that he did not know whether there was actually any moisture on the floor, or whether any fruit had actually fell, in the area where Dossett was. (Docket No. 21-11, at p. 28, 30). Rather, he assumed there was something on the floor based on the presence of an employee sweeping that area just before the fall. (*Id.*, at p. 28, 30). However, he stated that mats or rugs are a "precautionary device" used in areas such as those containing fruit, salad, or other loose product and wet product, and that they are "common sense in those areas, in most retail stores" and that that is part of best practice. (*Id.*, at p. 36, 50). Further, he noted that the employee's testimony was that he was called to the area because of spilled blueberries. Perkins stated that best practice in that circumstance would be to "cordon the area off by any means." (*Id.*, at p. 47).

Wal-Mart argues that Perkins's testimony will not assist the trier of fact and that Perkins does not have any specialized knowledge, training, or expertise. (Docket No. 21). Wal-Mart

5

argues that Perkins did not conduct any scientific studies, and cannot meet any of the *Daubert* factors. Further, Wal-Mart notes that much of his proposed testimony centers on actions that occurred after the fall, which are irrelevant to the issue of negligence.

In response, Dossett argues that Perkins has 35 years of experience in retail at Winn Dixie. Further, Dossett argues that Perkins testified that he was a safety director at Winn Dixie for over five years, and taught classes to employees about store safety and preventing harm to the customers. Dossett argues that his testimony is relevant because Wal-Mart committed several safety violations, which Perkins can point out and explain.

Here, the Court finds that Perkins possesses qualifications sufficient to certify him as an expert under the standards laid out in *Daubert*. 509 U.S. 579, 597 (1993). His experience with Winn-Dixie as a Safety Officer exposed him to best practices for retail supermarkets. While there, he taught employees about customer safety, as well as attended conferences on the same topic. Thus, the Court will deny the Defendant's motion in part. However, the Court finds that much of Perkin's proposed testimony is inadmissible. Perkins cannot testify as to his conclusion that there was wetness on the floor, as there is no way he could know this information. Further, his testimony as to events that occurred after the fall is inadmissible. Perkins may testify that, in his experience, he believes Wal-Mart violated best practices by not having mats/signs out as a precautionary measure based on the potential of wetness in the area, not his knowledge of any actual wetness there.

## CONCLUSION

For these reasons, and consistent with the Court's conclusions above,

IT IS HEREBY ORDERED that Defendant's Motion in Limine, (Docket No. 21), is **GRANTED in part and DENIED in part**.